IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| MMG INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5:21-cv-00075 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| PROGRESSIVE NORTHERN | ) | By:  Hon. Thomas T. Cullen |
| INSURANCE COMPANY, | ) |      United States District Judge |
| | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff MMG Insurance Company ("MMG"), a Maine corporation, brought this declaratory judgment action against Defendant Progressive Northern Insurance Company ("Progressive"), a Wisconsin corporation, to determine each company's coverage obligation for a motor-vehicle accident involving a driver who was simultaneously covered by policies issued by both parties. The matter is now before the court on the parties' cross-motions for summary judgment. The motions were fully briefed by the parties, and the court heard oral argument on October 27, 2022. The matter is now ripe for decision. For the reasons explained below, the court will grant Progressive's motion and deny MMG's motion.

## I. BACKGROUND

This declaratory action stems from an incident that occurred on January 4, 2021, involving Kevin VanPelt and Dwight Haslacker in the parking lot of a Harrisonburg 7-Eleven. (the "Accident") (Compl. ¶¶ 11–12 [ECF No. 1]; Stip. ¶ 4 [ECF No. 10].) On that date, VanPelt was running errands within the scope of his employment and in his personal vehicle for Heritage Memorials, Inc. ("Heritage") when he stopped to fill up his 2012 Nissan Titan

("Titan") with gas.[1] (*Id.* ¶ 17; Stip. ¶ 3; VanPelt Dep. 16:18–19:3, June 29, 2022 [ECF No. 18-3].) While VanPelt was filling-up at the 7-Eleven, Haslacker was servicing the gas pump intakes. (*Id.* ¶ 12.) When VanPelt drove away from the pumps, he apparently struck Haslacker, dragging him several feet. (*Id.* ¶ 13; Stip. ¶ 4.) Haslacker was taken to the hospital for treatment and intends to file a lawsuit claiming more than $75,000 in damages. (*Id.* ¶¶ 14–15; Stip. ¶ 5.) At the time of the Accident, VanPelt and his Titan were insured by a personal auto policy issued by MMG ("MMG Policy"), while Heritage was the named insured on a commercial auto policy issued by Progressive ("Progressive Policy").[2] (*Id.* ¶¶ 18–19; MMG Policy [ECF No. 1-1]; Progressive Policy [ECF No. 1-2].)

Under the MMG Policy, Kevin VanPelt is a named insured, and his 2012 Nissan Titan is listed as a covered auto. (MMG Policy at 2–3.) Specifically, the MMG Policy provides up to $500,000 in coverage for each "bodily injury . . . for which an insured becomes legally responsible because of an auto accident." (MMG Policy at 3, 29.) The MMG Policy defines an "insured" as including "[VanPelt] . . . for the ownership, maintenance, or use of any auto . . . ." and "for [VanPelt's] covered auto, any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded . . . ." (*Id.*

---

[1] Progressive does not concede that VanPelt was within the course and scope of his employment at the time of the incident but contends that, for purposes of determining the priority of coverage issue, the court may assume, without deciding, that he was. (Def.'s Mem. in Supp. of Summ. J at 2, n.2 [ECF No. 16].)

The parties have stipulated that VanPelt was a Heritage employee, and that his deposition testimony is to be construed as the testimony of Heritage. (Stip. ¶¶ 1, 10, 11.) VanPelt believes that he was in the scope of his employment during the Accident because he was in the process of acquiring office supplies for Heritage, only stopped to get gas between stops, and paid for purchased supplies and gas with a Heritage company credit card. (*Id.* Van Pelt. Dep. 18:2–19:3; 21:4–11.)

[2] The parties do not dispute that both policies provided coverage during the relevant time of the Accident, or that the policies provided to the court in exhibits are the full and accurate copies of the respective policies. (Stip. ¶¶ 6–9.)

at 29.) The MMG Policy also includes an Other Insurance provision, which provides, in relevant part: "If there is other applicable insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits . . . ." (*Id.* at 31.) This type of provision is commonly known as a *pro rata* insurance clause.³

As to the Progressive Policy, Heritage is listed as the named insured, and four vehicles owned by Heritage are listed as covered autos.⁴ (Progressive Policy at 3.) Similarly worded to the MMG Policy, the Progressive Policy provides up to $1,000,000 in coverage for "bodily injury . . . for which an insured becomes legally responsible because of an accident arising out of . . . use of that insured auto . . . ." (*Id.* at 13.) The Progressive Policy defines an insured as:

> 1. [Heritage] with respect to an insured auto.
> 2. Any person while using with [Heritage's] permission, and within the scope of that permission, an insured auto [Heritage] own[s], hire[s], or borrow[s] except . . .
>   > (c) The owner or anyone else from whom the insured auto is leased, hired, or borrowed . . . .
> 3. Any other person or organization, but only with respect to the legal liability of that person or organization for acts or omissions of any person otherwise covered under this part.

(*Id.*) The Progressive Policy also contains an Other Insurance provision:

> For any insured auto that is specifically described on the declarations page, this policy provides primary coverage. For an insured auto which is not specifically described on the declarations page, coverage under this policy will be excess over any and all other valid and collectible insurance, whether primary, excess or contingent . . . .

---

³ Such a clause provides that, if the insured has other insurance against the same loss, the insurer will not be liable for a greater proportion of such loss than the applicable limit of its liability shown in the policy bears to the total applicable limit of liability of all valid and collectible insurance against such loss. *New Appleman Insurance Law Practice Guide* 32.14 (3d 2022).

⁴ The four covered autos listed on the declarations page of the Progressive Policy are: (1) one 1998 Ford F80, (2) one 1990 Ford F8F, (3) one 2006 Ford F150, and (4) one 2009 Ford F650 Super Duty. (Progressive Policy at 3.)

(*Id.* at 29.) The last sentence of this provision is commonly known as an *excess* insurance clause.[5]

In addition to the base-Progressive Policy, Heritage paid an additional premium to include a non-owned auto endorsement that modifies definitions used elsewhere in the policy. As relevant here, the endorsement modifies the definition of an "insured auto" to include "non-owned auto[s]," which "includes autos owned by [Heritage] employees, partners, members, or members of their households, but only while such autos are used in [Heritage's] business . . . ." (*Id.* at 35.) Importantly, the endorsement includes an additional Other Insurance clause that applies specifically to non-owned autos; that clause states: "The insurance provided by this endorsement is excess over any other valid and collectible insurance." (*Id.*)

Based on the language in their respective policies, MMG and Progressive dispute their coverage obligations in relation to Haslacker's expected claims. The dispute prompted MMG's filing of its November 24, 2021 complaint (*see* ECF No. 1) seeking a declaration that the parties are obligated to apportion future coverage *pro rata*. (Compl. ¶ 37.) Progressive denies that it would owe any coverage beyond excess insurance in Haslacker's claims. (*See generally* Answer [ECF No. 4].) The parties engaged in limited discovery and have since filed the instant cross-motions for summary judgment. (ECF Nos. 15, 17.) For the reasons that follow, the court will grant Progressive's motion for summary judgment and deny MMG's.

---

[5] Excess clauses provide that, if the insured has other insurance covering the same incident, the policy will not apply until the insured has exhausted the coverage under its other policy. *New Appleman Insurance Law Practice Guide* § 32.14 (3d 2022).

## II. STANDARD OF REVIEW

Under Rule 56(a), the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Glynn v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir. 2013). When making this determination, the court should consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits" filed by the parties. *Celotex*, 477 U.S. at 322 (cleaned up). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). Whether a fact is material depends on the relevant substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* (cleaned up). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets that burden, the nonmoving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

When considering summary judgment regarding the interpretation of contracts, the court "faces a conceptually difficult task . . . ." *Id.* at 245. To satisfy summary judgment without extrinsic evidence a writing must be unambiguous. *Id.* A writing is not unambiguous if "susceptible to two reasonable interpretations." *Am. Fid. & Cas. Co. v. London & Edinburgh Ins.*

*Co.*, 354 F.2d 214, 216 (4th Cir. 1965). A court must first "determine whether, as a matter of law, the contract is ambiguous or unambiguous on its face." *World-Wide Rights Ltd. P'ship*, 955 F.2d at 245. If the contract is unambiguous on the dispositive issues, a court can interpret the contract as a matter of law and grant summary judgment. *See id.* On the other hand, if a court determines that the contract is ambiguous, it may still "examine evidence extrinsic to the contract that is included in the summary judgment materials" and grant summary judgment if that evidence proves dispositive. *Id.* If, however, extrinsic evidence still leaves genuine issues of fact regarding the contract's interpretation, "summary judgment must of course be refused and interpretation left to the trier of fact." *Id.*

### III.  ANALYSIS

In its motion for summary judgment, MMG argues that the parties should share the cost of covering Haslacker's future claims, *pro rata*, because both policies primarily insure VanPelt or his Titan. (Pl.'s Mem. in Supp. Summ. J. at 11 [ECF No. 18].) Alternatively, MMG argues that, even if the Progressive Policy does not provide primary coverage to VanPelt or his Titan—or if the Progressive Policy's non-owned auto endorsement applies—the court should still apportion coverage *pro rata* because the other insurance clauses in both policies are mutually repugnant. (*Id.* at 13.)

Progressive counters that it is obligated to provide excess coverage only. (Def.'s Mem. in Supp. Summ. J. at 5.) It reasons that the MMG Policy provides primary liability coverage to VanPelt and his Titan, which triggers the Progressive Policy's excess clause contained in the non-owned auto endorsement of its policy, which Progressive believes is applicable. (*Id.*) For the reasons that follow, the court agrees with Progressive.

**A. Choice of Law and Rules Governing Interpretation of the Insurance Policies**

In this diversity action, the court must apply the substantive law and choice-of-law rules of the state in which it sits—Virginia. *See Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 623–24 (4th Cir. 1999) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941)). Virginia's choice-of-law rules dictate that, in interpreting a contract, courts apply the law of the state where the contract was made. *See Lexie v. State Farm Mut. Auto. Ins. Co.*, 251 Va. 390, 394 (1996). Under Virginia law, "an insurance contract on or with respect to the ownership, maintenance or use of property in this Commonwealth shall be deemed to have been made in and shall be construed in accordance with the laws of this Commonwealth." *Factory Mut. Ins. Co. v. Liberty Mut. Ins. Co.*, 518 F. Supp. 2d 803, 808–09 (W.D. Va. 2007) (cleaned up) (quoting Va. Code Ann. § 38.2-313). The two insurance policies in this case were executed in Virginia and provide coverage for a business, vehicles, and people that are in Virginia, so Virginia law applies. *Accord Buchanan v. Doe*, 246 Va. 67, 70–71 (1993) (finding that, under Virginia law, "the law of the place where an insurance contract is written and delivered controls issues as to its coverage")

**B. MMG and Progressive Policies Applied to VanPelt as of January 4, 2021**

MMG first contends that the non-owned auto endorsement of the Progressive Policy does not apply, and that the court should apportion coverage equally between the parties as co-primary insurers of VanPelt or his Titan. To determine whether Progressive and MMG are co-primary insurers, the court "must interpret and apply the language of the policies according to settled principles of Virginia law regarding the interpretation of insurance policies." *Allied*

*Prop. & Cas. Ins. Co. v. Zenith Aviation, Inc.*, 336 F. Supp. 3d 607, 611 (E.D. Va. 2018) (cleaned up) (citing *Seals v. Erie Ins. Exch.*, 277 Va. 558, 562 (2009)).

Under Virginia law, "an insurance policy is a contract to which the ordinary rules of contract interpretation apply." *State Farm Fire & Cas. Co. v. Wallace*, 997 F. Supp. 2d 439, 447 (W.D. Va. 2014) (cleaned up) (citing *TravCo Ins. Co. v. Ward*, 736 S.E.2d 321, 325 (Va. 2012)). "If policy language is clear and unambiguous, the court does not apply rules of construction; rather, it gives the language its plain and ordinary meaning and enforces the policy as written." *Seabulk Offshore, Ltd. v. Am. Home Assurance Co.*, 377 F.3d 408, 419 (4th Cir. 2004) (cleaned up) (citing *P'ship Umbrella, Inc. v. Fed. Ins. Co.*, 260 Va. 123, 133 (2000)). "Conversely, when the policy language is ambiguous and the intentions of the parties cannot be ascertained, the policy must be construed strictly against the insurer and liberally in favor of the insured, so as to effect the dominant purpose of indemnity or payment to the insured." *Id.* (citing *St. Paul Fire & Marine Ins. Co. v. S.L. Nusbaum & Co.*, 227 Va. 407, 411 (1984)).

Policy "language is ambiguous when it may be understood in more than one way or when such language refers to two or more things at the same time." *Salzi v. Va. Farm Bureau Mut. Ins. Co.*, 263 Va. 52, 55–56 (2002) (cleaned up). Whether an insurance policy is ambiguous is a question of law for the court to decide. *Wilson v. Holyfield*, 227 Va. 184, 187 (1984). A court should not find ambiguity "merely because the parties disagree as to the meaning of the language employed by them in expressing their agreement." *Id.* Similarly, a court "must not strain to find ambiguities" where there are none. *Admiral Ins. Co. v. G4S Youth Servs.*, 634 F. Supp. 2d 605, 612 (E.D. Va. 2009). A court should allow common sense as well as canons of construction to guide its interpretation of a provision. *See Mount Aldie, LLC v. Land Tr. of Va.*,

*Inc.*, 293 Va. 190, 200 (2017) ("Our presumption is always that the parties 'were trying to accomplish something rational. Common sense is as much a part of contract interpretation as is the dictionary or the arsenal of canons.'" (quoting *Fishman v. LaSalle Nat'l Bank*, 247 F.3d 300, 302 (1st Cir. 2001)).

Although MMG contends that both policies are primary liability policies, the plain language of both policies indicates that, regarding the Accident, MMG's coverage is primary, while Progressive's is secondary. The MMG Policy specifically lists VanPelt as a named insured, and his Nissan Titan—the car VanPelt was driving when he hit Haslacker—as an insured auto. (MMG Policy at 2–3; Stip. ¶¶ 2, 6.) The MMG Policy also provides that "[w]e will pay damages for bodily injury . . . for which any insured becomes legally responsible because of an auto accident." (*Id.* at 29.) VanPelt is unambiguously an insured under the policy; he was driving his insured vehicle during the Accident; and he may be legally responsible for hitting Haslacker.[6] (*Id.* at 2–3, 29; Stip ¶ 2.) MMG must provide primary liability coverage for Haslacker's claims arising out of the Accident.

The Progressive Policy, on the other hand, does not provide primary liability coverage to VanPelt or his Titan. On the contrary, it extends primary liability coverage only to the four specific vehicles owned by Heritage and listed on the declarations page[7]—none of which were driven by VanPelt at the time of the Accident. (Progressive Policy at 3, 13, 29; Stip. ¶ 2.) But MMG reasons that the Progressive Policy still provides primary liability coverage to VanPelt

---

[6] The court makes no finding as to VanPelt's actual legal liability in future claims by Haslacker.

[7] The Other Insurance clause of the Progressive Policy provides in relevant part, "For any insured auto that is specifically described on the declarations page, this policy provides primary coverage. For an insured auto which is not specifically described on the declarations page, coverage under this policy will be excess over any and all other valid and collectible insurance, whether primary, excess or contingent . . . ." (Progressive Policy, at 29.)

because Heritage was "borrowing" VanPelt's Titan when VanPelt struck Haslacker. (Pl.'s Mem. in Supp. Summ. J. at 12–13.) But this argument is misleading because MMG does not acknowledge the plain language of the exception that follows.

Although "exclusionary language in an insurance policy will be construed most strongly against the insurer," *Am. Reliance Ins. Co. v. Mitchell*, 238 Va. 543, 547 (1989) (cleaned up), "when the language in an insurance policy is clear and unambiguous, courts give the language its plain and ordinary meaning and enforce the policy as written." *Selective Way Ins. Co. v. Crawl Space Door Sys., Inc.*, 162 F. Supp. 3d 547, 551 (E.D. Va. 2016) (cleaned up) (citing *Blue Cross & Blue Shield v. Keller*, 248 Va. 618, 626 (1994)). Here, the Progressive Policy's "Liability to Others" section—which MMG relies on—expressly defines an insured as, in relevant part, "[a]ny person while using with [Heritage's] permission, and within the scope of that permission, an insured auto [Heritage] own[s], hire[s], or borrow[s] *except . . . [t]he owner* or anyone else from whom the insured auto is leased, hired or borrowed . . . ." (Progressive Policy at 13) (emphasis added). Because VanPelt owned the Titan he was driving on January 4, 2021, the exception applies to bar coverage even if Heritage was borrowing VanPelt's Titan at the time.

Instead, contrary to MMG's contention, Progressive provides liability coverage to VanPelt's Titan by way of the non-owned auto endorsement in its policy. The non-owned auto endorsement, as previously mentioned, expressly modifies certain definitions used elsewhere in the Progressive Policy. (Progressive Policy at 35.) As relevant here, the endorsement modifies the definition of "insured" to include "non-owned autos," which "includes autos owned by [Heritage] employees, partners, members, or members of their

households, but only while such autos are used in [Heritage's] business . . . ." (*Id.*) VanPelt's Titan is therefore an insured non-owned auto according to the express terms of the Progressive Policy's endorsement. Heritage did not own, hire, or borrow the Titan, nor was it listed on the declarations page of the Progressive Policy at the time VanPelt hit Haslacker. (*Id.* at 3; Stip.¶ 2.) And the court assumes for purposes of these motions, without deciding, that VanPelt was using the Titan for Heritage business in his capacity as a Heritage agent, at the time he struck Haslacker.

Accordingly, the non-owned auto endorsement is the operative portion of the Progressive Policy that extends liability coverage to future claims stemming from the January 4, 2021 accident. As such, the court will consider MMG's Other Insurance clause in tandem with the Other Insurance clause contained in Progressive's non-owned auto endorsement to determine priority of coverage over Haslacker's future claims.

### C. Reconciling the MMG and Progressive Other Insurance Clauses

Because policyholders may purchase overlapping coverage, insurance policies "generally contain 'other insurance' clauses that attempt to define the insurer's responsibility for payment when other insurance coverage is available." *Horace Mann Ins. Co. v. Gen. Star Nat'l Ins. Co.*, 514 F.3d 327, 330 (4th Cir. 2008). Other insurance clauses typically take the form of *pro rata*, escape, or excess clauses. *Horace Mann Ins. Co.*, 514 F.3d at 330. As relevant here, a *pro rata* clause "limits the insurers liability to its pro rata share of the loss in the proportion that its limits bear to the aggregate of available liability coverage," while an excess clause "provides that the insurer will be liable only after the exhaustion of the limits of any other applicable insurance. *Id.* (cleaned up) (quoting *State Farm Mut. Auto. Ins. Co. v. U.S. Fidelity & Guar. Co.*,

490 F.2d 407, 410 (4th Cir. 1974)). Interpretation and application of Other Insurance clauses may become complicated when "multiple liability policies potentially provide coverage for a given loss and each of the policies contains an Other Insurance clause." *Id.* at 331.

### 1. Courts Can Reconcile *Pro Rata* and Excess Clauses Under Virginia Law

If the Other Insurance clauses of two policies have the same effect, then neither provides purely primary coverage and *pro rata* apportionment of coverage is appropriate. *See Aetna Cas. & Sur. Co. v. Nat'l Union Fire Ins. Co.*, 233 Va. 49, 54 (1987) ("[W]hen other insurance clauses of two policies are of identical effect in that they operate mutually to reduce or eliminate the amount of collectible insurance available, neither provides primary coverage and *pro rata* distribution is appropriate") (cleaned up). But when dissimilar Other Insurance clauses exist, as here,[8] the weight of authority indicates that the court can reconcile the two clauses and enforce them according to their terms. *See Horace Mann Ins. Co.*, 514 F.3d at 331 (collecting cases); *Med. Protective Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania*, 25 F. App'x 145, 147 (4th Cir. 2002) (citing *Jones v. Medox, Inc.*, 430 A.2d 488, 489, 491–93 (D.C. 1981)) (declaring that the majority view reconciles "the pro rata clause and the excess clause by interpreting the policy containing the excess clause as secondary coverage," and identifying the minority view as the Lamb–Weston rule, which "abandons all attempts to discern the intent of the contracting parties where there are dissimilar Other Insurance clauses" and takes the position that all Other Insurance clauses, regardless of their nature, are mutually repugnant, requiring proration of liability) (cleaned up).

---

[8] The parties agree that MMG's other insurance clause is a *pro rata* clause and Progressive's is an excess clause. (Pl.'s Mem. in Supp. Summ. J. at 14; Def.'s Mem. in Supp. Summ. J. at 4–5).

In cases where the Other Insurance clauses are similar, courts have voided them as mutually repugnant because they cancel each other out. *See, e.g.*, *Nationwide Mut. Fire Ins. Co. v. Erie Ins. Exch.*, 293 Va. 331 (2017); *Aetna Cas. & Sur. Co.*, 233 Va. at 54. In *Nationwide Mutual Fire Insurance Co.*, the court determined that both excess insurance clauses in question were "virtually identical in effect . . . irreconcilable and mutually repugnant," and therefore ordered a *pro rata* distribution of the insurance coverage. 293 Va. at 331. Similarly, in *Aetna Casualty & Surety Co.*, the court held the two *pro rata* insurance clauses in question to be "virtually identical in effect, irreconcilable, and mutually repugnant." 233 Va. at 54. But here, the Progressive and MMG Other Insurance clauses are not mutually repugnant. The Other Insurance clauses contain dissimilar provisions—an excess clause and *pro rata* clause, respectively—which the court *can* reconcile.

In *Medical Protective Co. & St. Paul Fire and Marine Insurance Co. v. National Union Fire Insurance Co.*, the Fourth Circuit resolved a dispute over the effect of dissimilar insurance clauses and held that National Union's excess clause provided secondary coverage to St. Paul's policy, which contained a *pro rata* clause that provided primary coverage. 25 F. App'x. at 147. In so doing, the Fourth Circuit relied on the Virginia Supreme Court's previous ruling in *GEICO v. Universal Underwriters Insurance Co.*, where that court decided "which of two competing uninsured motorist policies provided primary coverage" and "declined to follow cases concluding that dissimilar 'other insurance' clauses are mutually repugnant." *Id.* (citing *GEICO v. Universal Underwriters Ins. Co.*, 232 Va. 326, 350 (1986)).

MMG makes no attempt to distinguish *GEICO* or the Fourth Circuit's holding in *Medical Protective Co.* Rather, MMG simply argues that the court should be guided by a contrary

- 13 -

decision of the Fairfax County Circuit Court. *See Am. Bankers Ins. Co. of Fla. v. Jefferson Pilot Fire & Cas. Co.,* 21 Va. Cir. 3 (1989). In that case, the court determined that two Other Insurance clauses—an excess clause and *pro rata* clause—were mutually repugnant and ordered the insurance companies to apportion liability coverage *pro rata. See id.* at 9. But, as the Fourth Circuit noted in *Medical Protective Co.* "the court in *Jefferson Pilot* ignored *GEICO* and misapplied two other decisions of the Virginia Supreme Court." 25 F. App'x. at 148. The cases on which the circuit court relied do not stand for the proposition that *dissimilar* Other Insurance clauses are mutually repugnant, but that *similar* other insurances clauses are mutually repugnant. *See Aetna Cas. & Sur. Co.*, 233 Va. at 54; *State Capital Ins. Co. v. Mut. Assurance Soc'y Against Fire on Bldgs.*, 218 Va. 815, 820 (1978) (holding that two excess clauses are "in irreconcilable conflict with one another"). The court therefore declines to follow the ruling in *Jefferson Pilot*. Indeed, the year following that decision, the Virginia Supreme Court, in comparing dissimilar other insurance clauses, albeit with a slightly different analytical focus, opined, "[W]here such policy provisions can be read together, we will not go beyond them. We will, instead, rely upon the policy provisions alone to determine which policy affords primary coverage and which is entitled to the protected position of an excess insurer." *United Servs. Auto. Ass'n v. Travelers Indem. Co.*, 240 Va. 214, 218 (1990) (cleaned up).

Accordingly, it is appropriate for the court to reconcile the dissimilar Other Insurance clauses to declare which policy provides primary coverage for the insured. To do so, the court must look directly at each insurance carrier's applicable Other Insurance provision to determine the parties' liability obligations. *See United Servs. Auto. Ass'n.*, 240 Va. at 218. MMG's other insurance clause states, "If there is other applicable insurance we will pay only our share

of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits . . . ." (MMG Policy at 31.) Progressive's Other Insurance clause in the controlling non-owned auto endorsement provides that "[t]he insurance provided by this endorsement is excess over any other valid and collectible insurance." (Progressive Policy at 35.) Under the majority rule, "a reference to other valid and collectible insurance is construed as a reference to other primary insurance." *Med. Protective Co.*, 25 F. App'x at 148 (citing *Jones*, 430 A.2d at 491). Progressive's mention of "other valid and collectible insurance," thus refers to other primary insurance, making its coverage excess to MMG's. *Id.* at 148. Conversely, MMG's Other Insurance clause does not contemplate the existence of a different primary insurer. Instead, it declares that, in the case where a loss is covered by an additional insurer, MMG's *pro rata* clause is triggered to apportion coverage.

In disputes between *pro rata* and excess clauses, courts applying the majority rule in reconciling the two policies have generally held that the excess clause provided secondary coverage while the *pro rata* clause provided primary coverage. *Id.* at 147 (citing *Jones*, 430 A.2d at 491). Consequently, according to the majority rule and Virginia law, MMG provides primary liability coverage in claims stemming from the Accident, while Progressive provides excess coverage. *Accord Early Settlers Ins. Co. v. Selected Risks Ins. Co.*, 346 F. Supp. 1272, 1277 (E.D. Va. 1972) (holding that, "where two policies afford coverage on a particular loss, and one contains a pro rata clause as to other insurance and the other policy contains an excess clause, the policy containing the excess clause does not provide any coverage until the other insurance policy is exhausted").

Accordingly, MMG's coverage is primary, and Progressive's policy is only implicated when that coverage is exhausted or if MMG's coverage is not "available" to Heritage.

### 2. MMG's Coverage is "Available" to Heritage

Finally, the court must determine whether MMG's coverage was "available" to Heritage so as to trigger the excess insurance provision in the Progressive Policy. In so doing, the court must examine the Insuring Agreement in the MMG Policy. *See United Servs. Auto Ass'n*, 240 Va. at 218. MMG's Insuring Agreement defines an "insured" as "[VanPelt] . . . for the ownership, maintenance, or use of any auto . . . ," and "for [VanPelt's] covered auto, any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded . . . ." (MMG Policy at 29.) As previously mentioned, MMG's coverage is primary for VanPelt's liability arising from the use of his Titan because he was a named insured, and his Titan was listed as an insured auto under the MMG Policy. (*Id.* at 3.)

It follows that Heritage is a "person or organization" covered by the MMG Insuring Agreement with respect to its "legal responsibility because of acts or omissions of a person for whom coverage is afforded" because VanPelt, as the parties have stipulated to for purposes of summary judgment, was acting within the scope of his employment for Heritage when he hit Haslacker. *See United Servs. Auto Ass'n*, 240 at 219. Since Heritage is an "insured" under an express provision of the MMG Policy, MMG's primary liability coverage is available to Heritage for claims stemming from the Accident. Availability of the MMG Policy to Heritage, therefore, triggers the excess insurance clause contained in the non-owned auto endorsement of the Progressive Policy which, as noted above, provides that coverage "is excess over any

other valid and collectible insurance" in relation to insured non-owned autos used for Heritage business purposes. *See, e.g.*, *United Servs. Auto Ass'n*, 240 at 219 (concluding that availability of a primary policy activates the excess insurance clause in a secondary policy providing excess coverage).

Progressive is therefore bound by its insurance contract with Heritage to provide coverage—with respect to VanPelt's liability—only after any other available insurance to Heritage has been exhausted. Conversely, MMG is bound to furnish primary liability coverage to VanPelt, a direct insured, until it exhausts its limit of liability. *See Med. Protective Co.*, 25 F. App'x at 148 (concluding that the policy containing the *pro rata* clause is primary insurance that triggers application of an excess clause in another policy); *Jones*, 430 A.2d at 491 ("The excess clause in the second policy is therefore given full effect and that carrier is liable only for the loss after the primary insurer had paid up to its policy limits"); *Horace Mann Ins. Co.*, 514 F.3d at 334 (stating the general proposition that, "as between a true excess policy and a primary liability policy with an other insurance clause, the limits of the policy that provides primary insurance must *always* be exhausted before coverage under the excess policy is triggered").

## IV.   CONCLUSION

The court finds that there is no genuine dispute of material fact as to the liability coverage obligations owed by MMG and Progressive. MMG must provide primary coverage in future claims by Haslacker stemming from VanPelt's liability on January 4, 2021, until its limit of liability is exhausted. Progressive must extend coverage to Haslacker's future claims only after MMG exhausts its limit of liability. For these reasons, the court will grant summary judgment to Progressive and deny it as to MMG.

The clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

**ENTERED** this 2nd day of November, 2022.

/s/ *Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE